Perkins v. Dunlap.

PERKINS *adm'r. vs.* DUNLAP & AL. *ex's.*

Where N contracted for the purchase of an estate from A, and paid him 1200 dollars in part, and D advanced the residue for him, being 500 dollars, and took the conveyance directly to himself, upon a verbal agreement that he should release the land to N on payment of the 500 dollars; and then D died, and his heirs refused to convey;—it was held that to carry into effect the original understanding of the parties, N might be considered as having advanced the 1200 dollars to enable D to purchase the estate, for which the estate of the latter was liable, as for money lent to the testator.

In this case, which was *assumpsit* upon promises of the testator, with the common money counts, the material facts are stated in the opinion of the Court, which was delivered by

MELLEN C. J. The facts of the case are these. *Abbot* being the owner of the Dunning-Tavern estate, contracted with *Nickels*, the intestate, for the sale of it for 1700 dollars. *Nickels* paid in part by other property of the value of 1200 dollars, as estimated by the parties, and as found by the jury, and the remaining 500 dollars were paid by *Dunlap*, the testator; and thereupon *Abbot* conveyed the said tavern estate to the testator by an absolute deed in fee. From the report it appears that the 500 dollars were paid to *Abbot*, and the deed made to the testator, at the request of *Nickels*; and though there is no evidence that the testator was conusant of the arrangements between *Abbot* and *Nickels* in the earlier stages of them, yet it does appear that in their completion he became fully acquainted and connected with them, and for the purpose of effectuating the

Perkins *v.* Dunlap.

objects of all concerned, he accepted the deed from *Abbot*, under the circumstances disclosed in the case; declaring afterwards to the assessors of the town, on a question of taxation, that he was interested only to the amount of 500 dollars in the estate, on payment of which sum he should convey it to *Nickels*.    Thus it is evident that all were assenting to the several parts of the transaction; and it is immaterial, as to this cause, at what time the testator became an assenting party to it, because it is a familiar principle that subsequent assent is equivalent to previous request; and the continued possession and enjoyment of the estate, by the testator and his representatives, is a continuing assent to avail themselves of the advantages resulting to them from the payment of the 1200 dollars by *Nickels* to *Abbot*.    In this view of the facts we do not perceive any objection to the maintenance of this action on the ground of there having been no request on the part of the testator, or knowledge of the contract with *Abbot* for the estate, prior to his own connexion with it.

The next inquiry is whether the statute of frauds is a bar to the action.    The plaintiff does not expect nor profess to maintain it on the parol promise of the testator to convey the estate to *Nickels*, on his paying the 500 dollars and interest; he has no such count in his declaration; but he contends that he has a right to recover the 1200 dollars, being the value of the tavern estate, as money paid at the request, and for the use, of the testator.    In this view, it is contended that the statute of frauds has no connection with the subject; and that it cannot furnish a bar to such claim, any more than it would be a bar against the recovery of a sum of money lent to A, to assist him in purchasing a farm of B, and which A appropriated to that purpose. Viewing the transaction as ultimately assented to by all three of the parties, the cause has been presented to us, and the facts marshalled, in the following manner.    The testator is considered as having agreed to become the purchaser of the estate; as having himself paid 500 dollars, in part of the price; as having received from *Nickels*, beneficially, the remaining 1200 dollars; and then taking the deed from *Abbot* to himself; *Nickels* intending and expecting to receive the full ultimate advantage of the above sum, and the testator know-

Perkins *v.* Dunlap.

ing of this intention and expectation, and frankly agreeing to the arrangement on which they were founded. It is impossible not to see that the testator intended that the 1200 dollars should in some way or other be accounted for to *Nickels;* and if, in such a solemn transaction as the conveyance of real estate, it is the duty of the court to give such a construction to a deed, as that, if it cannot operate in the way it was intended, it may operate as a different species of conveyance, so as to effectuate the general intention of the grantor, there can be no sound reason why the general intent of all the parties to the transaction we are considering, should not be carried into effect by the construction we have given to it; in the former case *ut res magis valeat quam pereat;* in the latter, to do justice, by compelling the representatives of the testator to account for the advantages they have received, and continue to enjoy, by means of the arrangement which was made for his benefit, and sanctioned by his assent, in receiving the conveyance to himself. It is no new principle that a man may be held accountable in damages, as on an implied contract, in many cases, in which he never imagined that he had made any species of contract; as in that class of cases where a man may waive the tort as in *Hambly v. Trott Cowp.* 375, and seek his remedy for damages occasioned by the wrong, in an action of *assumpsit.* Thus for instance, where a trespasser has converted the property taken into cash, the injured party may sue the trespasser in an action of trespass, or waive the tort, and treat him as a debtor, having the plaintiff's money in his hands.

Let us suppose the fact to have been that, pending the negociation for the purchase of the tavern estate, the testator had offered to advance 500 dollars to *Abbot* in part payment, and that *Nickels* had assented to it, and thereupon the conveyance had been to him. Could the statute of frauds be a bar to the testator's recovery of the 500 dollars, as money paid to *Abbot* for the use of *Nickels?* How is the case altered, except as to the amount advanced, because *Nickels* advanced 1200 dollars to *Abbot* by the testator's consent, and thereupon the conveyance was made to the testator? Was not this money advanced, and has it not gone, to the exclusive use of the testator, by his consent? This consent may be fairly implied

Perkins v. Dunlap.

from the reported facts; indeed they will not admit of any other implication; and if his assent is implied, the law raises a promise of payment. In an equitable and pecuniary point of view, such was the essence of the whole transaction; and the refusal of the defendants to procure a conveyance to the representatives of *Nickels*, when the tender was made, is in affirmance of the idea. On these facts, thus presented, we do not perceive any legal principle which prevents our considering the 1200 dollars, as paid by *Nickels*, by the consent of the testator, clearly implied, and for his use and benefit. And why should not the plaintiff recover it? Equity and justice would be unable to assign any satisfactory reason, while the heirs or devisees of the testator claim to hold, and do hold the estate, under existing circumstances. When a contract is made for the purchase of an estate, and a part of the price is deposited, and upon examination of the abstract of the title it is found defective, and no deed can be given to convey a good title, the deposit may be recovered back. So if a man verbally agrees for an estate, and pays the price, and then the owner refuses to make a deed, the money paid may be recovered back, the bargain being disaffirmed. In such cases as these, the statute of frauds is no bar. 1. *Bos. & Pul.* 306. 3. *Stark.* 1614, 1615, and cases there cited. The action is not attempted to be maintained upon the contract for sale, to recover damages for not conveying; but to reclaim the money paid, which is detained without any consideration given for it. These are plain principles. The objection as to the tender, that no deed was offered to the executors for signature, cannot now be sustained. If a good one, it was waived by their conduct in assigning other reasons at the time. The tender was rightfully made to the executors; and if they had not the power to convey, they should have procured a conveyance from those who were authorized to do it.

On the whole we are all of opinion that the action is maintainable, and there must be                *Judgment on the verdict.*

*Longfellow* and *Fessenden* for the plaintiff.

*Orr* for the defendants.